IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

| | |
|---|---|
| AUSTIN RANDY OWENS, | |
| Plaintiff, | CIVIL ACTION NO.: 2:23-cv-59 |
| v. | |
| OFFICER BRANDON THORNTON, and OFFICER GRIFFITH, | |
| Defendants. | |

**O R D E R**

This matter is before the Court on Defendant Thornton's unopposed Motion for Summary Judgment.  Doc. 51.  The time for Plaintiff to file a response has elapsed, and Defendant Thornton's Motion is now ripe for adjudication.  For the following reasons, I **GRANT** Defendant Thornton's unopposed Motion for Summary Judgment as to Plaintiff's federal claims and **DISMISS without prejudice** Plaintiff's state law assault and battery claims.  I **DIRECT** the Clerk of Court to enter the appropriate judgment as to Defendant Thornton and **DENY** Plaintiff leave to proceed *in forma pauperis* on appeal.[1]

**PROCEDURAL HISTORY**

Plaintiff brought this suit under 42 U.S.C. § 1983, alleging violations of his constitutional rights.  Doc. 1.  I conducted frivolity screening under 42 U.S.C. § 1915A, leaving pending only Plaintiff's Fourth Amendment excessive force claims against Defendants Thornton and Griffith

---

[1] Defendant Griffith filed a separate motion for summary judgment on October 15, 2024.  Doc. 65. I will address Defendant Griffith's motion by separate order.

and Plaintiff's state law assault and battery claims against Defendants Thornton and Griffith. Doc. 14.

Defendant Thornton filed this Motion for Summary Judgment on July 31, 2024. Doc. 51. Defendant Thornton argues he is entitled to summary judgment because he used reasonable force during a lawful arrest and because he is entitled to official immunity on Plaintiff's state law claims. Doc. 51 at 2.

Plaintiff moved for an extension of time to respond. The Court granted the motion, giving Plaintiff until November 15, 2024, to respond. Docs. 59, 62. The Court then granted Plaintiff an additional 21 days to respond, extending the deadline for response to December 4, 2024. Doc. 72. Plaintiff requested and was granted another extension, resulting in a new response deadline of January 9, 2025. Docs. 73, 77. Plaintiff requested additional time to respond, which the Court granted. The Court extended Plaintiff's deadline to respond to February 7, 2025. Docs. 80, 86. Thus, Plaintiff requested and received several extensions of time to respond. Plaintiff still has not filed a response.

Even though Plaintiff has not responded, "the district court cannot base the entry of summary judgment on the mere fact that the motion [is] unopposed but, rather, must consider the merits of the motion." United States v. One Piece of Real Property Located at 5800 SW 74th Ave., Miami, Fla., 363 F.3d 1099, 1101 (11th Cir. 2004) (citation omitted). Specifically, the court "must still review the movant's citations to the record to determine if there is, indeed, no genuine issue of material fact." Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1303 (11th Cir. 2009) (citation omitted)

**UNDISPUTED MATERIAL FACTS**

The allegations in Plaintiff's unsworn Complaint are not to be considered in resolving Defendant Thornton's Motion for Summary Judgment. See Chambliss v. Buckner, 804 F. Supp. 2d 1240, 1248 (M.D. Ala. 2011) ("Allegations in an unsworn complaint are not evidence for purposes of summary judgment and, thus, cannot be considered." (citing Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986))).

Defendant Thornton submitted a Statement of Material Facts ("Defendant's SMF") in support of his Motion for Summary Judgment, in accordance with the Federal Rule of Civil Procedure 56 and Local Rule 56.1.  Doc. 85-1.  Defendant Thornton's SMF is supported by:

1. Plaintiff's arrest information sheet, doc. 52-1;
2. Plaintiff's blood toxicology report, doc. 52-2;
3. Officer Thornton's case report, doc. 52-3;
4. Dashboard camera footage from Officer Thornton's patrol vehicle, doc. 52-4; and
5. Footage from Officer Thornton's body worn camera, doc. 52-5.

Plaintiff has not responded to Defendant Thornton's SMF.  Even so, when considering the record at summary judgment, "all justifiable inferences are to be drawn" in favor of the non-movant.  Shaw v. City of Selma, 884 F.3d 1093, 1098 (11th Cir. 2018) (internal quotations omitted) (quoting Tolan v. Cotton, 572 U.S. 651 (2014)).  Thus, the Court identifies the following undisputed, material facts for the purposes of evaluating Defendant Thornton's Motion for Summary Judgment.

On March 27, 2023, Defendant Thornton, an officer with the St. Marys Police Department, was dispatched in response to a call.  The caller stated to dispatchers that the father of her children had cut off his probation ankle monitor.  Doc. 51-1 at 1.  The dispatcher told

Defendant Thornton that the suspect (identified as Plaintiff) was going to an "undeveloped recreational property[]" and informed Thornton what the suspect was wearing and what vehicle the suspect was driving.  Id.

When Defendant Thornton arrived at the property, the suspect fled in his vehicle.  Defendant Thornton activated his emergency lights and siren, but Plaintiff did not respond and proceeded to drive away.  Id. at 1–2.  Plaintiff accelerated to between 80 and 95 miles per hour in a 45 mile per hour zone.  Id. at 2.  Defendant Thornton radioed for backup, and Defendant Griffith responded, as did St. Marys Police Sergeant Misty Gilliland.  Id.  Officers chased Plaintiff for approximately two and a half minutes.  Id.  Defendant Griffith drove his patrol vehicle in front of Plaintiff to force him to slow down.  Plaintiff lost control of the vehicle and crashed into the side of Defendant Griffith's vehicle.  Id.

Defendant Thornton drove his patrol vehicle behind Plaintiff's vehicle.  Plaintiff reversed, but Officer Thornton drove forward, trapping Plaintiff's vehicle.  Id. at 2–3.  Officer Thornton exited his patrol vehicle, drew his service weapon, and approached the driver's side door of Plaintiff's vehicle.  Deputy Griffith drew his weapon and approached the passenger side.  Id. at 3.  Both officers ordered the suspect to exit the vehicle.  Plaintiff raised his hands but did not exit the vehicle.  Defendant Thornton ran around the rear of the suspect's vehicle and proceeded to where Defendant Griffith was situated on the passenger side of the suspect's vehicle.  Defendant Griffith removed Plaintiff from the vehicle and put him on the ground.  Id.

Plaintiff attempted to lift his torso, and both Defendant Thornton and Defendant Griffith ordered him repeatedly to stay on the ground.  Plaintiff did not comply.  Defendant Griffith placed one hand on the side of Plaintiff's head and one on his arm to stop him from standing.  Id.

Plaintiff continued to resist, despite Defendant Thornton's commands to Plaintiff to stop. Id. at 4.

Defendant Thornton placed Plaintiff in handcuffs after approximately 20 seconds of resistance from Plaintiff. Defendant Thornton searched Plaintiff and removed a wallet from his pocket. Defendant Thornton returned to his patrol vehicle to deactivate his siren, then returned and ordered Plaintiff to stand. Plaintiff stated that he could not breathe. Defendant Thornton took Plaintiff's elbow and pulled him to his feet. Defendant Thornton then walked Plaintiff to the back of Sergeant Gilliland's vehicle, patted him down, and then ordered Plaintiff to sit in the backseat of the patrol vehicle. Id.

Defendant Thornton determined from dispatchers that Plaintiff's driver's license was suspended and that Plaintiff had outstanding felony warrants in South Carolina. Defendant Thornton also learned from dispatchers that Plaintiff's vehicle tag was not valid and that the vehicle had been reported stolen. Defendant Thornton suspected Plaintiff was under the influence of a narcotic, and later blood tests confirmed that Plaintiff was under the influence of methamphetamine and marijuana at the time of his arrest. Id. at 5. Plaintiff was later charged with two counts of aggravated assault and one count each of attempting to elude police, felony theft, possession of a schedule II controlled substance, driving under the influence of drugs, driving while license suspended, reckless driving, fugitive from justice, possession and use of drug-related objects, and affixing a tag with intent to conceal the identity of a vehicle. Id.

## DISCUSSION

**I.  Summary Judgment Standard**

Summary judgment "shall" be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  However, there must exist a conflict in substantial evidence to pose a jury question."  Hall v. Sunjoy Indus. Grp., Inc., 764 F. Supp. 2d 1297, 1301 (M.D. Fla. 2011) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), and Verbraeken v. Westinghouse Elec. Corp., 881 F.2d 1041, 1045 (11th Cir. 1989)).  "If the evidence [produced by the non-moving party] is merely colorable or is not significantly probative summary judgment must be granted."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242 at 249 (1986) (citations omitted).

The moving party bears the burden of establishing there is no genuine dispute as to any material fact and he is entitled to judgment as a matter of law.  See Williamson Oil Co., Inc. v. Philip Morris USA, 346 F.3d 1287, 1298 (11th Cir. 2003).  Specifically, the moving party must identify the portions of the record which establish there are no "genuine dispute[s] as to any material fact and the movant is entitled to judgment as a matter of law."  Moton v. Cowart, 631 F.3d 1337, 1341 (11th Cir. 2011).  When the non-moving party would have the burden of proof at trial, the moving party may discharge his burden by showing the record lacks evidence to support the non-moving party's case or the non-moving party would be unable to prove his case at trial.  See id. (citing Celotex v. Catrett, 477 U.S. 317, 322–23 (1986)).  Once the party moving for summary judgment satisfies its initial burden, the burden shifts to the non-moving party to come forward with specific facts showing a genuine dispute for trial.  Hinson v. Bias, 927 F.3d

1103, 1115 (11th Cir. 2019). In determining whether a summary judgment motion should be granted, a court must view the record and all reasonable inferences that can be drawn from the record in the light most favorable to the non-moving party. Peek-A-Boo Lounge of Bradenton, Inc. v. Manatee County, 630 F.3d 1346, 1353 (11th Cir. 2011).

## II.  Defendant Thornton Used Reasonable Force

Defendant Thornton argues that Plaintiff's § 1983 claims fail as a matter of law because any force that Defendant Thornton used in effecting Plaintiff's arrest was de minimis and objectively reasonable. Doc. 51 at 7–12. Defendant Thornton further argues that, even if his conduct had been unlawful, he would be entitled to qualified immunity. Id. at 12–13.

### A.  Fourth Amendment Reasonable Force Standard

"The Fourth Amendment's freedom from unreasonable searches and seizures encompasses the plain right to be free from the use of excessive force in the course of an arrest." Lee v. Ferraro, 284 F.3d 1188, 1197 (11th Cir. 2002) (citing Graham v. Connor, 490 U.S. 386, 394–95 (1989)). However, "Fourth Amendment jurisprudence has long recognized that the right to make an arrest . . . necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." Graham v. Connor, 490 U.S. 386, 396 (1989). Any use of force must be reasonable, and "the force used by a police officer in carrying out an arrest must be reasonably proportionate to the need for that force." Alvin v. Veal, CV417-206, 2020 WL 1061285, at *4 (S.D. Ga. Feb. 6, 2020) (quoting Scott v. Palmer, 210 F. Supp. 3d 1303, 1313 (N.D. Ala. 2016)). "The reasonableness inquiry [asks] whether the officer's actions are objectively reasonable in light of the facts and circumstances confronting him, without regard to his underlying intent or motivation." Kesinger ex rel. Estate of Kesinger v. Herrington, 381 F.3d 1243, 1248 (11th Cir. 2004) (internal quotations omitted). To determine whether the amount of

7

force used by Defendant Thornton was proper, the Court must ask whether a reasonable officer would believe the level of force used was necessary under the circumstances.  Lee, 284 F.3d at 1197.  Whether an officer's use of force was excessive or reasonable "is a 'pure question of law,' decided by the court." Stephens v. DeGiovanni, 852 F.3d 1298, 1321 (11th Cir. 2017) (quoting Myers v. Bowman, 713 F.3d 1319, 1328 (11th Cir. 2013)).

This inquiry requires courts to "slosh [their] way through the fact bound morass of 'reasonableness.'" Scott v. Harris, 550 U.S. 372, 383 (2007).  Consequently, a court must "look at the fact pattern from the perspective of a reasonable officer on the scene with knowledge of the attendant circumstances and facts, and balance the risk of bodily harm to the suspect against the gravity of the threat the officer sought to eliminate." McCullough v. Antolini, 559 F.3d 1201, 1206 (11th Cir. 2009); see also Graham, 490 U.S. at 396 (A particular use of force must be judged "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.").  Additionally, a court must consider that "police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." Graham, 490 U.S. at 397.

"In Graham, the Supreme Court articulated three factors to guide a reviewing court's determination whether an officer's actions were reasonable under the circumstances." Spencer v. City of Orlando, 725 F. App'x 928, 931 (11th Cir. 2018) (citing Graham v. Conner, 490 U.S. 386, 396 (1989)).  These factors include: (1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officers or others; and (3) whether he is actively resisting arrest or attempting to evade arrest by flight.  Id.  This is a non-exhaustive list of factors for courts to consider.  Charles v. Johnson, 18 F.4th 686, 699 (11th Cir. 2021).

In addition to the Graham factors, courts in the Eleventh Circuit routinely consider: "(1) the need for the application of force, (2) the relationship between the need and amount of force used, and (3) the extent of the injury inflicted." Stephens, 852 F.3d at 1324 (internal quotations omitted); see also Mobley v. Palm Beach Cnty. Sheriff Dep't, 783 F.3d 1347, 1353 (11th Cir. 2015); Glasscox v. City of Argo, 903 F.3d 1207, 1214 (11th Cir. 2018); Pequeno v. Seminole County, 1:20-CV-32, 2022 WL 5165147, at *9 (M.D. Ga. Aug. 24, 2022), appeal docketed sub nom. Pequeno v. Carr, No. 22-13257 (11th Cir. Sep. 22, 2022). In applying these factors, "[d]etermining whether an exercise of force was reasonable cannot be reduced to a mechanical exercise, but 'requires careful attention to the facts and circumstances of each particular case.'" Montanez v. City of Orlando, 678 F. App'x 905, 910 (11th Cir. 2017) (citing Graham, 490 U.S. at 396). Accordingly, "[i]f an officer reasonably, but mistakenly, believes that one of the factors relevant to the merits of the constitutional excessive-force claim is present, the officer is justified in using more force than in fact was needed." Williams v. Deal, 659 F. App'x 580, 597–98 (11th Cir. 2016).

**B.    Analysis**

All three Graham factors weigh in Defendant Thornton's favor. The first factor, the severity of the crime at issue, favors Defendant Thornton because the undisputed facts demonstrate that Plaintiff was driving recklessly prior to his arrest. Reckless, dangerous, and elusive driving can justify the use of force in making an arrest. Glasscox, 903 F.3d at 1215. The undisputed material facts demonstrate that Plaintiff was driving between 80 and 95 miles per hour prior to his arrest, at least 35 miles per hour over the posted speed limit. Doc. 51-1 at 2. Officers had to chase Plaintiff at high speeds for approximately two and a half minutes. Id.

Similarly, the second <u>Graham</u> factor, which asks whether Plaintiff posed a threat to others' safety, favors Defendant Thornton. The extended, high-speed nature of the chase clearly placed officers, any other potential drivers, and Plaintiff himself at great risk. Plaintiff's refusal to cooperate with officers also reasonably could have led them to believe he posed a threat. <u>See</u> <u>Mongeau v. Jacksonville Sheriff's Office</u>, 197 F. App'x 847, 850–51 (11th Cir. 2006) (finding police use of force reasonable when the suspect ran traffic lights, sped, entered the highway in the wrong direction, and refused to get out of his car when prompted by officers).

The third <u>Graham</u> factor, whether Plaintiff was resisting or evading arrest, also favors Defendant Thornton. Plaintiff attempted to elude capture by police in an extended vehicle chase. The undisputed facts also demonstrate that Plaintiff repeatedly refused to cooperate when arresting officers issued commands. Doc. 51-1 at 2. Plaintiff actively resisted while Defendant Thornton attempted to place him in handcuffs. <u>Id.</u> at 4. Plaintiff was also charged with attempting to elude police and with reckless driving. <u>Id.</u> at 5. The undisputed facts, therefore, demonstrate that Plaintiff attempted to evade arrest. The undisputed facts also show that Defendant Thornton handcuffed him after a struggle, searched him, and placed him in Sergeant Gilliland's patrol vehicle—demonstrating that Defendant Thornton used only minimal force to arrest Plaintiff. <u>Id.</u> at 3–4. All three <u>Graham</u> factors favor Defendant Thornton.

The <u>Stephens</u> factors weigh in favor of Defendant Thornton, as well. As explained above, the need for some use of force is clear. Plaintiff led officers on a high-speed chase, well over the speed limit, and only stopped when he lost control and struck Defendant Griffith's vehicle. Plaintiff refused to comply with directives and resisted arrest. To effect an arrest in those circumstances, Defendant Thornton had to apply at least some force. The amount of force used was also proportionate to the need. The undisputed material facts demonstrate that Officer

Thornton used no more force than was necessary to arrest a resisting suspect. See Woodruff v. Trussville, 434 F. App'x 852, 855 (11th Cir. 2011) (finding that an officer who punched the suspect, removed him from the vehicle by force, and slammed him to the ground used only de minimis force). Finally, the extent of the injury weighs in favor of Defendant Thornton. The only injury to Plaintiff evident from the evidence was a small laceration to his forehead. Doc. 52-3 at 5. Plaintiff was taken to the hospital, treated, and released into police custody again. Id. at 6. "When more force is required to effect an arrest without endangering officer safety, the suspect will likely suffer more severe injury, but that alone does not make the use of that force unreasonable." Mobley v. Palm Beach Cnty. Sheriff Dep't, 783 F.3d 1347, 1355 (11th Cir. 2015). Plaintiff was indisputably injured, but there is no evidence of any significant consequences from the injury. Thus, when evaluated in context with the need to use force and the proportionality of the force to the need, this injury appears relatively minor. In sum, the totality of the circumstances strongly suggests that Defendant Thornton used only reasonable force.

In failing to respond to Defendant Thornton's Motion, Plaintiff has not provided any evidence to create a genuine dispute of material fact. Plaintiff has failed to meet his burden, and summary judgment in favor of Defendant Thornton is appropriate.[2]

---

[2] Plaintiff indicated in the Complaint that he intends to sue Defendant Thornton in his individual and official capacities. Doc. 1 at 2. Plaintiff's official capacity claim against Defendant Thornton is essentially a suit against the City of St. Marys. See Kentucky v. Graham, 473 U.S. 159, 165 (1985). Municipal liability under § 1983 requires a plaintiff to show: (1) a constitutional violation; (2) the municipality had a custom or policy that constituted deliberate indifference to the constitutional right; and (3) the policy or custom caused the violation. McDowell v. Brown, 392 F.3d 1283, 1289 (11th Cir. 2004) (citation and punctuation omitted). Because Officer Thornton did not commit a constitutional tort, any official-capacity claim against him fails as a matter of law.

### III.  Qualified Immunity

Defendant Thornton argues that he is entitled to qualified immunity because his use of force was appropriate.  Doc. 51 at 12.  "Qualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Dalrymple v. Reno, 334 F.3d 991, 994 (11th Cir. 2003) (quoting Hope v. Pelzer, 536 U.S. 730, 739 (2002)).  For qualified immunity to apply, the official must establish "he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred."  McCullough, 559 F.3d at 1205 (citation omitted).  If the official shows he was acting within the scope of his discretionary authority, then the burden shifts to the plaintiff to "show that: (1) the defendant violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation."  Whittier v. Kobayashi, 581 F.3d 1304, 1308 (11th Cir. 2009) (quoting Holloman v. Harland, 370 F.3d 1252, 1264 (11th Cir. 2004)).

Plaintiff has not responded to Defendant Thornton's Motion, and so there is no dispute whether Defendant Thornton was acting within the scope of his discretionary authority.  An official acts within his discretionary authority when he "performs a legitimate job-related function through means that are within his power to utilize."  Nam Dang v. Sheriff, Seminole Cnty., 871 F.3d 1272, 1279 (11th Cir. 2017) (citation and punctuation omitted).  The undisputed material facts demonstrate that Defendant Thornton acted to apprehend Plaintiff.  Doc. 51-1 at 1–2.  This was after being dispatched as an officer of the St. Marys Police Department.  Id.  Thus, Defendant Thornton clearly acted within the scope of his discretionary authority.  See Johnson v. City of Atlanta, 107 F.4th 1292, 1301 (11th Cir. 2024) ("It is well established than an arrest of someone suspected of violating the law is within the discretionary authority of a police officer.")

(citation omitted). The burden, therefore, rests with Plaintiff to show that Defendant Thornton violated an established constitutional right. As explained above, Plaintiff has not shown a Fourth Amendment violation, so Defendant Thornton is entitled to qualified immunity.

## IV.  Plaintiff's State Law Claims

Plaintiff's only federal claim is subject to summary judgment. In these circumstances, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims for assault and battery.

A district court may decline to exercise supplemental jurisdiction if the court "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). And the Eleventh Circuit encourages "district courts to dismiss any remaining state law claims when, as here, the federal claims have been dismissed prior to trial." Raney v. Allstate Ins. Co., 370 F.3d 1086, 1089 (11th Cir. 2004) (citation omitted); see also Arnold v. Tuskegee Univ., 212 F. App'x 803, 811 (11th Cir. 2006) ("When the district court has dismissed all federal claims from a case, there is strong argument for declining to exercise supplemental jurisdiction over the remaining state law claims.") (citation omitted). Further, "[w]hen a district court declines to exercise supplemental jurisdiction because only state law claims remain, the district court should dismiss the state law claims without prejudice 'so that the claims may be refiled in the appropriate state court.'" Granite State Outdoor Adver., Inc. v. Cobb County, 193 F. App'x 900, 907 (11th Cir. 2006) (quoting Crosby v. Paulk, 187 F.3d 1339, 1352 (11th Cir. 1999)). Therefore, I **DISMISS without prejudice** Plaintiff's state law assault and battery claims against Defendant Thornton.

## V.  Leave to Appeal *in Forma Pauperis*

I also deny Plaintiff leave to appeal *in forma pauperis*. Though Plaintiff has not yet filed a notice of appeal, it is proper to address these issues now. See Fed. R. App. P. 24(a)(3) (noting

trial court may certify appeal of party proceeding *in forma pauperis* is not taken in good faith "before or after the notice of appeal is filed").

An appeal cannot be taken *in forma pauperis* if the trial court certifies the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3). Good faith in this context must be judged by an objective standard. Busch v. County of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when he seeks to advance a frivolous claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless. Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). Thus, a claim is frivolous and not brought in good faith if it is "'without arguable merit either in law or fact.'" Moore v. Bargstedt, 203 F. App'x 321, 323 (11th Cir. 2006) (quoting Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001)); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Based on the above analysis of Plaintiff's claims and Defendant Thornton's Motion for Summary Judgment, there are no non-frivolous issues to raise on appeal, and an appeal on these claims would not be taken in good faith. Thus, I **DENY** Plaintiff *in forma pauperis* status on appeal.

## CONCLUSION

For the foregoing reasons, I **GRANT** Defendant Thornton's unopposed Motion for Summary Judgment as to Plaintiff's federal claims. I **DISMISS without prejudice** Plaintiff's state law assault and battery claims. I **DIRECT** the Clerk of Court to enter the appropriate

judgment as to Defendant Thornton and **DENY** Plaintiff leave to proceed *in forma pauperis* on appeal.

**SO ORDERED**, this 21st day of March, 2025.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA